IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

DaVita Inc.,

       Plaintiff,

v.

UnitedHealthcare of Florida, Inc. and
All Savers Insurance Co.,

       Defendants.

---

**DAVITA INC.'S MOTION TO QUASH
UNITED HEALTHCARE OF FLORIDA, INC. AND ALL SAVERS INSURANCE CO.'S
SUBPOENA**

---

Plaintiff, DaVita Inc. ("DaVita"), through undersigned counsel, hereby moves the Court

for an order pursuant to Fed. R. Civ. P. 45(d)(3) quashing the subpoena served on DaVita on

September 20, 2016 by Defendants UnitedHealthcare of Florida, Inc. and All Savers Insurance

Co. (collectively, "United"). In support thereof, DaVita states the following:

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), DaVita's counsel certifies that he conferred in

good faith with United's counsel regarding this Motion. United opposes the relief requested

herein. Details of counsel's conferral follows below.

**INTRODUCTION**

The subpoena at the heart of this motion issued from a lawsuit pending in the Southern

District of Florida (the "ARA action") brought by United against American Renal Associates

LLC ("ARA") and American Renal Associates Holdings, Inc. ("ARAH"). DaVita is *not* a party

to that case. The subpoena, attached as Exhibit 1, should be quashed because it represents an improper attempt by United to obtain documents and information from DaVita for an unrelated dispute between United and DaVita, it seeks documents that are wholly irrelevant to United's claims in the ARA action, and it is overly broad.

First, it is well-settled law that a discovery request is properly denied where its purpose is to gather information for use in proceedings other than the suit in which it is tendered. Here, United's Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") (attached as Ex. 1) brazenly seeks to use the litigation it instituted in Florida against ARA and ARAH as a subterfuge to obtain discovery against non-party DaVita to be used in unrelated proceedings. In particular, United's Subpoena seeks documents that relate to a dispute arising from a contract between United and DaVita under which DaVita provides United insureds with dialysis services. In that contract, United and DaVita agreed to extensive dispute resolution procedures, as well as the terms by which United could request and receive DaVita documents and records. United also seeks via subpoena documents to use in its national efforts to influence regulations of HIPP and related matters. The Subpoena, through which United seeks to gain information for these other matters, should, therefore, be quashed.

Second, the Subpoena requests material entirely irrelevant to the claims United has actually asserted in the ARA action. DaVita's communications regarding the ARA litigation out of which the Subpoena issued and its communications with the American Kidney Fund ("AKF") have absolutely no bearing on that case -- whether defendant ARA committed violations of the

2

Florida Deceptive Trade Practices Act or fraud, or otherwise violated any alleged duties *to United* with respect to the thirty United insureds who received dialysis treatments from ARA.

Finally, the Subpoena is dramatically overbroad insofar as it seeks communications and documents that predate the allegations in the ARA action by nearly *six* years, and because it demands communications with *any* dialysis provider (not just defendant ARA), and without any geographic limitation (even though the insureds at issue in United's complaint against ARA received dialysis services only in either Ohio or Florida).

## FACTUAL AND PROCEDURAL BACKGROUND

**The ARA Action**

In the Florida action from which the Subpoena issued, United alleges that ARA, a dialysis provider, improperly steered approximately 30 ARA patients in Florida and Ohio from public insurance plans, like Medicaid and Medicare, to United's Gold Compass 1500 and Navigate Plus private insurance plans. *See* First Am. Compl. ("FAC"), attached as Exhibit 2, ¶¶ 1, 19, 95. The FAC alleges that ARA and its holding company, ARAH, are motivated by profit: while Medicaid and Medicare cap dialysis reimbursement rates at approximately $300 per session, ARA and ARAH are able to bill United, an out-of-network provider without a contractually agreed upon reimbursement rate, up to $4,000 per session. *Id.* at ¶ 6.

United alleges that ARA persuaded dialysis patients to switch to United's private insurance plans by waiving their co-pay, deductible, and co-insurance obligations and facilitating their participation in the Health Insurance Premium Program ("HIPP"), an initiative of AKF. *Id.* at ¶ 128. Funded by donations from dialysis providers, HIPP pays the private insurance premiums for qualified end-stage renal disease patients. *Id.* at ¶ 103. According to the FAC,

ARA conspired with AKF to have ARA and ARAH make large donations to AKF, which were then earmarked specifically for ARA patients who wanted to enroll in United's Gold Compass 1500 and Navigate Plus plans. *Id.* at ¶ 318. United further alleges that this practice is not in accordance with the Health and Human Services Office of Inspector General's ("OIG's") Advisory Opinion 97-1, issued to AKF in 1997 with respect to its acceptance of provider donations for HIPP. *Id.* at ¶¶ 24-29.

Based on these allegations, United asserted nine claims in the United States District Court for the Southern District of Florida against ARA and ARAH. The causes of action stem from ARA's alleged knowing and negligent misrepresentations and omissions to United with respect to its alleged steering scheme, as well as alleged violations of Florida's anti-kickback, patient brokering, and insurance fraud law. In particular, the claims are in violation of Florida's Deceptive and Unfair Business Practices Act against ARA (Count I); fraud against ARA (Count II); negligent misrepresentation and omission against ARA (Count III); unjust enrichment against ARA and ARAH (Count IV); tortious interference with contract against ARA (Count V); aiding and abetting fraud against ARAH (Count VI); civil conspiracy against ARA and ARAH (Count VII); vicarious liability against ARAH (Count VIII); and declaratory judgment (Count IX).

**Non-Party DaVita**

DaVita is not a party to the lawsuit in the Southern District of Florida, nor is it even referenced anywhere in the original or amended complaints.

Unlike ARA, DaVita is an *in-network* dialysis provider for United. The Ancillary Provider Participation Agreement, entered into by United and Davita in 2013 (the "DaVita-

United Agreement"), memorializes the terms and conditions under which DaVita provides

dialysis services to United insureds and receives reimbursements. *See* Decl. of Christy Crase

("Crase Decl."), attached as Exhibit 3, ¶ 4 (filed under seal)). Among other things, the DaVita-

United Agreement contains: (1) a provision governing United's access to DaVita's records; and

(2) extensive alternative dispute resolution procedures that govern "any dispute, controversy or

claim between them" arising from the agreement. *Id.* at ¶ 4.

Invoking the DaVita-United Agreement, United has already issued an information

request to DaVita on July 14, 2016,[1] seeking, *inter alia*, communications with other providers of

dialysis services regarding the AKF and all communications and agreements with AKF. *Id.* at

¶ 3. Although DaVita has objected to certain of United's requests, related discussions are

ongoing and DaVita has *already* produced significant information and numerous responsive

documents. *Id.* at ¶¶ 5, 8.

**United's Subpoena to DaVita**

On September 20, 2016, ten days before the deadline for ARA and ARAH to file their

motions to dismiss the FAC,[2] United served its Subpoena on DaVita. Issued by the Southern

District of Florida, the Subpoena commands production of seven categories of documents at a

"mutually agreeable location" by October 31, 2016 at 9:00 a.m. *See* Subpoena, Exh. 1.[3] With the

---

[1] Whether all of the information requested by United was properly sought under the DaVita-United Agreement is a contested issue between DaVita and United, the resolution of which is ongoing. *Id.* at ¶ 5.

[2] On September 30, 2016, ARA and ARAH filed motions to dismiss the FAC.

[3] On September 29, 2016, counsel for DaVita and United engaged in the first of a series of meet and confer communications. DaVita's counsel stated that the bulk of any responsive documents would be maintained at DaVita's Denver, Colorado headquarters and so asked that

exception of Request Nos. 3 and 7, all of the documents requested in the Subpoena were already requested by United under the DaVita-United Agreement. *See* Crase Decl., Exh. 3, ¶ 11.

Counsel for DaVita and United have engaged in a series of meet and confer communications by phone and by email. Asked to explain the relevance of the documents sought in the Subpoena to the ARA action, United's counsel broadly asserted that the requested material would prove a conspiracy between DaVita, the ARA, and other providers. United's counsel did not know one way or the other whether the 30 insurers at issue in the ARA action had any relationship with DaVita.

This motion follows service of DaVita's written objections to the Subpoena to United's counsel. *See* DaVita's Objections to Subpoena, dated October 4, 2016, attached as Exhibit 4.

## **ARGUMENT**

The court for the district where subpoena compliance is required must "quash or modify a subpoena that… subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Whether a subpoena imposes an undue burden turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. *DISH Network, L.L.C. v. WNET*, No. 13-CV-00832-PAB-LKM, 2014 WL 1628132, *3 (D. Colo. Apr. 24, 2014). In addition, the status of a person as a non-party is a factor that weighs against production. *Echostar Communications Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998). "If a subpoena compels disclosure of information that is not properly discoverable, then the

---

United's counsel agree to compliance there. (The Subpoena had specified a "mutually agreeable" place of compliance.) United's counsel so agreed.

burden it imposes, however slight, is necessarily undue." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).

United's Subpoena seeks information that is not properly discoverable via subpoena in three respects. First, the Subpoena improperly seeks information not for use in the lawsuit from which it was issued but instead to secure information United can use elsewhere – in its dispute under the DaVita-United Agreement and/or in its national efforts to influence regulations of HIPP and related matters. Second, the Subpoena seeks information legally irrelevant to the ARA action out of which it was issued and the claims asserted therein. Third, the Subpoena's requests are overbroad as to time, scope, and geography.

As such, DaVita respectfully requests that this Court quash the subpoena under Rule 45(d)(3)(A)(iv).

## I. The Subpoena Imposes An Undue Burden Because It Improperly Requests Information For United's Other Proceedings Against, and Other Disputes with, DaVita.

"It is axiomatic that a party cannot take [discovery] for purposes unrelated to the lawsuit at hand." *Echostar Communications Corp.*, 180 F.R.D. at 396 (quoting *Jennings v. Peters*, 162 F.R.D. 120, 122 (N.D. Ill. 1995)). Thus, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978).

Indeed, courts routinely prohibit discovery when a nonparty subpoena is engineered to obtain information for use in another proceeding. For example, in *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011), the district court reversed the magistrate judge's order requiring a non-party to produce certain emails. Rejecting the "tenuous" arguments about the

emails' relevance to the underlying litigation, the court found that the "true purpose" of the requested discovery was to bolster claims in a separate arbitration proceeding. The court held that the magistrate judge abused his discretion by ordering production. *Id. See also Gates v. Black Hills Health Care Sys.*, No. CIV 11-2013-RAL, 2013 WL 1683654, *1 (D. S.D. Apr. 17, 2013) ("A plaintiff may not use a lawsuit as a tool for 'a fishing expedition' to seek grounds for another lawsuit") (quoting *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675 (8th Cir. 2012)); *Pacific Century Intern., Ltd. v. Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. 2012) (denying motion to compel where it was "plain that the plaintiffs are not seeking information… for the purpose of litigating their current claims," but instead intended to use the information in other proceedings); *I'mnaedaft, Ltd. v. The Intelligent Office Sys., LLC*, No. 08-cv-01804-LTB-KLM, 2009 WL 1537975, *6 (D. Colo. May 29, 2009) ("'Ammo recon' missions, like fishing expeditions, are rarely appropriate and uniformly discouraged.") (citing *McGree v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. July 22, 2002)).

As detailed in the Crase declaration, United has subpoenaed information for two purposes unrelated to the ARA action out of which the subpoena was issued. First, United seeks information for possible use against DaVita under the DaVita-United Agreement. *See* Crase Decl., Ex. 3 ¶ 10. Second, United seeks documents to use in its national efforts to influence regulations of HIPP and related matters.[4] *Id.* at ¶¶ 9-10.

"A court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc.*, 437 U.S. at 352 n.17. The Court should, therefore,

---

[4] The only possible other rationale for United's having subpoenaed documents irrelevant to its claims in the ARA action – that it is engaged in a fishing expedition to prove a conspiracy it has not even pleaded – is equally impermissible. *See infra.*

squarely reject United's effort to short-circuit whatever limitations may ultimately be imposed by the DaVita-United Agreement, and quash the subpoena under Rule 45.

## II. The Subpoena Imposes An Undue Burden Because It Seeks Information That Is Not Relevant To The Claims in the ARA Action.

The Subpoena also imposes an undue burden on DaVita because the documents requested therein are not relevant to the claims in the ARA action. *See Von Schwab v. AAA Fire & Casualty Ins. Co.*, No. 1:14-cv-00183-CMS-NYW, 2015 WL 1840123, *2 (D. Colo. Apr. 21, 2015) ("Discovery targeted at matters not relevant to the case imposes a *per se* undue burden…."); *Straily v. UBS Fin. Svs., Inc.*, No. 07-cv-00884-REB-KMT, 2008 WL 5378148, *3-4 (D. Colo. Dec. 23, 2008) (non-party document requests that have "absolutely nothing to do with the claims asserted in [the] case" are beyond the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)); *Toto, Inc. v. Sony Music Entertainment*, No. C-13-mc-80168-MISC-JST, 2014 WL 793558, *2 (N.D. Cal. 2014) ("As the requested documents are neither relevant nor calculated to lead to the discovery of admissible evidence, any burden whatsoever imposed on [the] non-party [subpoena recipient] is by definition 'undue.'").[5] The Court should, therefore, grant DaVita's motion to quash.

---

[5] It is well-settled that the scope of permissible discovery under Rule 45 is coextensive with Rule 26(b). *See, e.g.,* 9A Wright & Miller, *Federal Practice and Procedure* § 2452 (3d ed. 2008); *E.E.O.C. v. Unit Drilling Co.*, No. 13-CV-147-TCK-PJC, 2014 WL 130551, *2 (N.D. Ok. Jan. 13, 2014). By its terms, Fed. R. Civ. P. 26(b)(1) limits the scope of discovery to any non-privileged matter that is relevant to any party's claim or defense. Prior to 2015, Rule 26(b)(1) also included within its scope information that appears "reasonably calculated to lead to the discovery of admissible evidence." When Rule 26(b)(1) was amended in 2015, that phrase was deleted because it had been "used by some, incorrectly, to define the scope of discovery." *See* Fed. R. Civ. P. 26 Advisory Committee Note (2015).

The gist of the FAC's allegations in the ARA action is that ARA, an out-of-network dialysis provider, improperly steered 30 Ohio and Florida patients from Medicare and Medicaid to United insurance plans, and then charged United exorbitant reimbursement rates for dialysis services. Significantly, the FAC does not make a single reference to DaVita, much less assert any claims against DaVita. To the contrary, the FAC alleges: (1) fraud, deceptive business practices, and negligent misrepresentation arising from *ARA's* communications with United; (2) tortious interference with 30 *ARA* patients' insurance contracts with United; (3) unjust enrichment relating to *ARA's* reimbursement for those 30 patients' dialysis services; and (4) civil conspiracy between *ARA* and *AKF*.

Despite the FAC's lack of allegations as to DaVita, United's Subpoena requests: DaVita's purported agreements with AKF; all of DaVita's communications with other dialysis providers and/or AKF regarding OIG Advisory Opinion 97-1, HIPP, and donations thereto; all communications regarding the litigation that United itself instituted against ARA and out of which the Subpoena was issued; documents showing whether any senior DaVita employees were employed by ARA after 2010; and documents showing whether any DaVita employees or directors have ever played an advisory role to AKF or had a financial relationship with AKF. *See* Subpoena, Exh. 1. None of these requested documents has any bearing on United's claims in the ARA action.

For example, United's first three claims in the ARA action for deceptive business practices, fraud, and negligent misrepresentation, respectively, are all based on alleged misrepresentations and omissions made *by ARA* to United:

- "ARA deceived UHC of Florida…." FAC ¶ 227 (Count I);

- "ARA knowingly made material misrepresentations and omissions to United" FAC ¶ 241 (Count II);

- "ARA had a duty to disclose to UHC of Florida…." FAC ¶ 286 (Count III).

DaVita's employees' relationships to AKF, DaVita's purported agreements with AKF, and DaVita's communications with AKF or other dialysis providers about *any* matter -- much less the ARA action itself -- have absolutely no bearing on whether *ARA* made misrepresentations to United and/or whether *ARA* had a duty of disclosure to United. *See Carjabal v. St. Anthony Central Hospital*, No. 12-cv-02257-REB-KLM, 2014 WL 3746967, *4 (D. Colo. July 30, 2014) (denying issuance of subpoenas where plaintiff did not connect his requests to any of the causes of action at issue in the lawsuit); *I'mnaedaft, Ltd.*, 2009 WL 1537975, *6 (holding that documents sought in subpoenas to non-party franchisees were irrelevant because claims asserted involved conduct "specifically directed by Defendants at Plaintiff, without involvement of the other franchisees").

Similarly, United's claims of unjust enrichment and tortious interference in Counts IV and V are rooted exclusively in benefits incurred *by ARA* and alleged conduct undertaken by ARA:

- "The money ARA and ARAH have received from United belongs in equity and good conscience to United" FAC ¶ 297 (Count IV);

- "ARA intentionally procured the breach of members' contracts by waiving their payment responsibilities and by coordinating with AKF…." FAC ¶ 306 (Count V).

The documents requested in the Subpoena, however, bear no relationship to whether *ARA*, an out-of-network provider vis-a-vis United, was entitled to the payments it received for the dialysis services at issue in the ARA action, or whether ARA intentionally induced a breach

of the 30 United insureds' contracts. That, unlike ARA, DaVita is an in-network dialysis provider for United with contractually codified, agreed reimbursement rights and obligations underscores the irrelevance of the Subpoena's document requests to the ARA action. *See Herman v. Seaworld Parks & Entertainment, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 WL 3746421, *2-3 (M.D. Fla. July 13, 2016) (denying motion to compel production of a contract involving a non-party that is not the subject of the litigation).

Nor may United use non-party discovery as a fishing expedition with respect to potential claims against DaVita that it might sometime later add to the ARA action. In *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469, 2011 WL 830624, *1-2 (S.D.N.Y. Mar. 9, 2011), for example, the court granted a non-party's motion to quash a subpoena where the plaintiffs intended to implead the non-party as a defendant and contended that the requested information would be relevant to its claims against that non-party. Noting that the 2000 amendments to Fed. R. Civ. P. 26(b)(1) limited discovery to "that which is relevant to any party's claim or defense" and precluded discovery to develop new claims or defenses not already identified in the complaint, the *Blue Angel Films* court held that "information relevant only to potential claims against [the non-party] is not discoverable." *Id.* at *2. *See also* Fed. R. Civ. P. 26 Advisory Committee Note (2000) ("The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action…. The rule change signals to the court that it has the authority to confine to discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

**III.    The Subpoena Poses An Undue Burden Because Its Document Requests Are Overbroad.**

Finally, the document requests in the Subpoena pose an undue burden on DaVita due to their overbreadth. While each and every one of the allegedly improper reimbursements described in United's FAC pertain to services rendered by *ARA,* in *Ohio and Florida,* during *2016*, the Subpoena demands production of DaVita's communications from *2010* to the present with AKF and *"any provider of dialysis services* other than [DaVita]" with respect to AKF, HIPP, OIG Advisory Opinion 97-1, and donations to HIPP. *See* Subpoena, Exh. 1. Because these requests exceed the timeframe at issue in the ARA action by five years, and contain *no* limitation as to the dialysis providers at issue, or their location, the Court should quash the subpoena under Fed. R. Civ. P. 45. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (courts have discretion to deny unduly broad discovery requests).

**CONCLUSION**

The Court should quash the subpoena under Fed. R. Civ. P. 45 because it: (1) improperly demands information for use in other proceedings against DaVita, (2) seeks documents that are irrelevant to the ARA action, and (3) is overbroad.[6]

---

[6] DaVita respectfully requests leave under Fed. R. Civ. P. 45(d)(1) and/or 26(g) to move for attorneys' fees in the event that the Court grants the instant motion.

Dated:  October 5, 2016.                    Respectfully submitted,


*s/ Andrew H. Myers*
Andrew H. Myers
Kasey K. Johnson
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Email:  myers@wtotrial.com
       kjohnson@wtotrial.com


Leonard A. Gail (*Pro Hac Vice Pending)*
Hillary Coustan (*Pro Hac Vice Pending)*
Massey & Gail LLP
50 East Washington Street
Chicago, Ill 60602
Telephone: 312.283.1590
Email:  lgail@masseygail.com
       hcoustan@masseygail.com

*Attorneys for Plaintiff DaVita Inc.*